**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **EREK SLATER,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | **1:20-cv-3356** |
| **v.** | ) | |
| | ) | |
| **CHICAGO TRANSIT AUTHORITY,** | ) | |
| a Municipal Corporation, | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

## COMPLAINT

1.     Plaintiff Erek Slater ("Plaintiff Slater"), is a bus operator employed by the Defendant Chicago Transit Authority ("Defendant CTA"), and Executive Board Member of the Amalgamated Transit Union Local 241 ("ATU Local 241"), the certified labor organization representing bus operators for the Defendant CTA.  Plaintiff Slater brings this Complaint pursuant to 42 U.S.C. § 1983 to enforce his rights to freedom of speech and freedom of association under the First Amendment of the United States Constitution as those rights are incorporated by the Fourteenth Amendment.  Plaintiff Slater alleges that the Defendant CTA is violating his First Amendment rights under color of state law by prohibiting him from *discussing* the safety, political and moral concerns held by himself and other bus operators related to the dangerous duties of transporting police to protests and transporting arrested demonstrators away from communities where many of these drivers live and discussing whether bus operators have the right to refuse said duties. Plaintiff Slater seeks preliminary and permanent injunctive relief against Defendant CTA's prohibition of said discussions and Defendant CTA's retaliation against him for participating in said discussions.

**PARTIES**

2.      Plaintiff Slater is a resident of the City of Chicago, Illinois, and is employed as a bus operator by the Defendant CTA and is an Executive Board Member of ATU Local 241, the certified Illinois labor organization representing the bus operators employed by the Defendant CTA.

3.      The Chicago Transit Authority is a body politic and municipal corporation with its principal office in the City of Chicago.  See 70 ILCS 3605/3 & 5.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States, namely the First Amendment, Fourteenth Amendment, and 42 U.S.C. § 1983.

5.      Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391 because the Defendant is located in this district and all the events and omissions giving rise to the claims occurred in this district.

**FACTS**

6.      This is an unprecedented time for the bus operators of the Defendant CTA.  Bus operators employed by the Defendant CTA are being ordered to transport packed buses of law enforcement, where social distancing is impossible, during a world-wide pandemic and are potentially exposing themselves, their families and their loved ones to deadly disease.

7.      Not only are these bus operators being asked to endanger themselves and their families from COVID-19 exposure, they are also being asked to place themselves in the middle of conflict zones with potentially violent protestors, law enforcement and military personnel.

8.     Many bus operators, like millions of citizens across the country, also hold sincere political and moral convictions regarding the use of police force against demonstrating civilians.

9.     Many bus operators have legitimate political and moral concerns regarding the heavily armed law enforcement and military response to the recent demonstrations against police brutality in Chicago and about being ordered to participate in these law enforcement actions through transporting law enforcement and military personnel to and from demonstrations.  Bus operators sought and obtained civilian employment with the Defendant CTA, not conscription into military service to quell domestic demonstrations against police brutality.

10.     Across the country, public bus operators affiliated with ATU locals have expressed disagreement with orders to transport demonstrators against police brutality who are arrested under questionable color of law and orders to transport law enforcement who may be effectuating said arrests.

11.     In addition to those with political and secular concerns with becoming part of the law enforcement response to police brutality demonstrations, some bus operators are opposed to conscription into law enforcement and military operations in the City of Chicago on firmly held and sincere religious beliefs and moral pacifism.

12.     Bus operators recognize the obvious – that being ordered to intervene in areas of conflict between law enforcement and police brutality demonstrators through transporting law enforcement and arrested demonstrators during a global pandemic, poses a danger to themselves and their families, and these bus operators, including Plaintiff Slater, are reasonably discussing exactly what risks are posed by these orders and what their rights are relative to these risks.

13.     Plaintiff Slater wishes to participate in off-duty discussions with his fellow bus operators regarding their safety, political and moral concerns related to orders to transport law

enforcement and military personnel to protests and potential orders to transport arrested demonstrators away from communities where many of these drivers live and whether bus operators have the legal right to refuse said duties.

14.     Plaintiff Slater wishes to hold these discussions during non-working time, in customary non-work areas at the Defendant's North Park Bus Garage located at 3112 W Foster Ave, Chicago, IL 60625, such as the Transportation Building breakroom and outdoor area with picnic tables between the parking lot and the Transportation Building.

15.     Plaintiff Slater especially wants to discuss these concerns with fellow bus operators at the Defendant CTA's North Park Bus Garage because that is where the bus operators are already speaking to each other about their safety concerns, rights and working conditions and because the Mass Membership Meetings of ATU Local 241 and access to ATU Local 241 facilities have been restricted due to the COVID-19 pandemic.

16.     Defendant CTA regularly permits its bus operators, including Plaintiff Slater, to engage in discussions and distribute material related to union and non-union matters when off-duty in non-work areas that do not disrupt the service of Defendant CTA, such as the Transportation Building breakroom and outdoor area with picnic tables between the parking lot and Transportation Building at the Defendant CTA's North Park Bus Garage.

17.     Defendant CTA also permits the elected union officials of ATU Local 241, including Plaintiff Slater, to be on the premises of the Defendant CTA's North Park Bus Garage outside of their hours of duty as bus operators for discussion of union business with fellow ATU Local 241 represented bus operators.

**On May 31, 2020 Defendant CTA Disrupted and Prohibited Disfavored Discussions of Concerns Regarding Orders to Transport Law Enforcement to Demonstrations by Bus Operators at Defendant CTA's North Park Bus Garage**

18.　　On May 31, 2020, at approximately 10:00 a.m,, Plaintiff Slater attempted to hold a off-duty discussion with approximately 20-25 off-duty bus operators at the outdoor picnic table area between the parking lot and the Transportation Building at the Defendant CTA's North Park Bus Garage. The off-duty bus operators were to discuss their concerns and rights relative to orders to transport law enforcement to conflict areas with police brutality demonstrators and potential orders to transport arrested demonstrators.

19.　　At said time and place, Plaintiff Slater and his fellow bus operators were approached by Defendant CTA's Senior Manager for the North Park Bus Garage, Jeffery Smith ("Sr. Manager Smith").

20.　　At said time and place, Sr. Manager Smith called Plaintiff Slater an "idiot", declared that the meeting was "illegal" and in violation of Defendant CTA's work rule prohibiting "wildcat strikes" and ordered the meeting dispersed.

21.　　Sr. Manager Smith then ordered Plaintiff Slater off the property of the Defendant CTA's North Park Bus Garage, threatened Plaintiff Slater to discharge Plaintiff Slater for violating the prohibition on "wildcat strikes" and threatened to call the Chicago Police Department to forcibly remove Plaintiff Slater from the property of the Defendant CTA's North Park Bus Garage.

22.　　Plaintiff Slater complied with the order and left the property and the informal gathering of off-duty bus operators dispersed.

**On June 1, 2020 Defendant CTA Again Disrupted and Prohibited Disfavored Discussions
of Concerns Regarding Orders to Transport Law Enforcement to Demonstrations by Bus
Operators at Defendant CTA's North Park Bus Garage**

23.     On June 1, 2020, at approximately 1:00 p.m., Plaintiff Slater attempted to hold

another informal discussion with approximately 8 off-duty bus operators in the breakroom of the

Transportation Building of the Defendant CTA's North Park Bus Garage regarding the concerns

and rights of bus operators relative to orders to transport law enforcement to conflict areas with

police brutality demonstrators and the transportation of arrested demonstrators.

24.     At said time and place, Sr. Manager Smith confronted Plaintiff Slater, and ordered

him to end the discussion on the basis it was a prohibited "wildcat strike". Sr. Manager Smith then

left the area.

25.     A few minutes later, Plaintiff Slater attempted to restart the conversation with

approximately 5 off-duty bus operators in the same breakroom area inside the Transportation

Building of the Defendant CTA's North Park Bus Garage.

26.     At said time and place, Sr. Manager Smith again confronted Plaintiff Slater and

again ordered him to end the attempted discussion on the basis that it was a prohibited "wildcat

strike" and threatened Plaintiff Slater again with forcible removal from the property if he

continued. Plaintiff Slater complied.

27.     Defendant CTA prohibits "wildcat strikes" through Rule 14(b) of the General Rule

Book, applicable to all employees of Defendant CTA, including Plaintiff Slater, which states as

follows:

**Rule 14. Personal Conduct** – The following acts are not permissible

(b) Leading fellow employees into a wildcat strike, work slowdowns, or other
impermissible job action, attempting to cause such a job action, or participating in such a
job action.

Exhibit 1, CTA General Rule Book.

**On June 5, 2020, Defendant CTA Issued a Behavioral Violation to Plaintiff Slater for the May 31, 2020 Discussion and Called the Chicago Police Department to Remove Plaintiff Slater from the Defendant CTA's North Park Bus Garage in Retaliation for Plaintiff Slater's First Amendment Activity and to Chill the First Amendment Activity of his Fellow Bus Operators**

28. On June 5, 2020, at approximately 5:45 a.m., Plaintiff Slater reported to the Transportation Building at the Defendant CTA's North Park Bus Garage to drive his scheduled bus route.

29. When Plaintiff Slater attempted to scan in to begin his shift operating a bus for Defendant CTA, the computer informed him to see the manager.

30. Plaintiff Slater then went to the management office in the Transportation Building at the Defendant CTA's North Park Bus Garage and met with the manager on-duty, Defendant CTA's Transportation Manager, Tony Wojewocki ("Transportation Manager Wojewocki"), who formerly worked as a police officer.

31. Transportation Manager Wojewocki verbally informed Plaintiff Slater he was taken out of service due to promoting a "work stoppage" and issued an "interview record" (Exhibit 2, June 5, 2020 "Interview Record" regarding May 31, 2020 behavioral violation) to Plaintiff Slater, alleging a behavioral violation for May 31, 2020, with citations to the following rule violations:

    a. General System Rule 14(d): "Insubordination" (Exhibit 1, CTA General Rule Book);

    b. General System Rule 14(e): "Conducting unbecoming of an employee" (Exhibit 1);

    c. General System Rule 14(x): "Disrespect to supervisory personnel, co-workers, or the public" (Exhibit 1);

d. System Rule B1: "General Information" (Exhibit 3, "CTA Bus System Rule Book"); and

e. System Rule B2.6: "Prohibited Activities" (Exhibit 3).

32.     Plaintiff Slater reviewed the "interview record" and asked Transportation Wojewocki to clarify the conduct that violated the rules cited by the "interview record" and incorporate this clarification in the written "interview record".

33.     Transportation Manager Wojewocki refused, informed Plaintiff Slater that a hearing on the alleged behavioral violation was scheduled for Thursday, June 11, 2020, at 9:00 a.m. and ordered Plaintiff Slater to sign the "interview record."

34.     Plaintiff Slater signed the "interview record" under protest, obtained a copy and proceeded to the breakroom at the Defendant CTA's North Park Bus Garage.

35.     Plaintiff Slater in his capacity of an elected Executive Board Member of ATU Local 241 then began in the Transportation Building breakroom discussing with bus operators his being taken out of service and disciplined for exercising his First Amendment rights and regarding the Defendant CTA's disruption of discussions regarding bus operator concerns with orders to transport police to demonstrations on the pretext that these discussions constituted "wildcat strike" activity.

36.     Transportation Manager Wojewocki then entered the breakroom and ordered the discussion ended and ordered Plaintiff Slater to leave the premises of Defendant CTA's North Park Bus Garage.

37.     Shortly after, Chicago Police Department officers arrived, and Plaintiff Slater complied with the order to leave the premises.

**Defendant CTA's Actions Follow Established Pattern of Illegal Suppression of Disfavored Speech on the Pretext of "Wildcat Strike" Activity**

38.     Defendant CTA's actions at issue are part of a consistent pattern and practice of abuse and infringement of Plaintiff Slater's freedom of speech by Defendant CTA.

39.     On June 10, 2015, Defendant CTA's then Senior Manager Jairo Naranjo ("Sr. Manager Naranjo") illegally disrupted Plaintiff Slater's attempt to hold discussions of a similar nature with off-duty bus operators in the same Transportation Building breakroom at the Defendant CTA's North Park Bus Garage regarding solidarity with the Chicago Teachers Union.   Exhibit 4, *Erek Slater v. CTA*, 34 PERI ¶ 160 (IL LRB-LP 2018) (RDO at pp. 33, 44).  Using an identical unlawful pretext, Sr. Manager Naranjo called Plaintiff Slater's speech "wildcat strike" activity in violation of Rule 14(b) and prohibited him from discussing the anticipated Chicago Teachers Union strike on the property of Defendant CTA's North Park Bus Garage.  *Id*.  This prohibition was held by the Illinois Labor Relations Board – Local Panel to violate Plaintiff Slater's rights pursuant to Section 10(a)(1) of the Illinois Public Labor Relations Act, 5 ILCS 315/10(a)(1).  *Id.* at 44.

40.     Following this illegal disruption of Plaintiff Slater's speech, Defendant CTA then violated its collective bargaining agreement and terminated Plaintiff Slater for his protected union activity.  Exhibit 5, *Slater/ATU Local 241 v. CTA* (Proposed Arbitration Award, 2017) at pg. 32. Plaintiff Slater was subsequently reinstated with backpay following successful arbitration of his termination.  *Id*.

**Future Demonstrations and Future First Amendment Infringements by the Defendant CTA Are Foreseeable as the Concurrent Crises Facing Our County Will Continue After the Immediate Demonstrations Conclude**

41.     The unprecedented economic recession, the COVID-19 pandemic and decades of accumulated social frustration at disparities in the criminal justice system, in economic

opportunity, in housing, in education, in access to healthcare etc., will outlast the current round of demonstrations.

42.     As the underlying conditions will persist for future demonstrations, there remains an on-going, foreseeable risk that the Defendant CTA will continue to order bus operators to transport police to demonstrations and will continue to infringe on disfavor speech by bus operators discussing concerns about these orders.

43.     Therefore, even after the current round of demonstrations end, the Defendant CTA's prohibition of bus operator speech, justified on the conflation of protected discussion of legitimate concerns and rights about dangerous orders with prohibited "wildcat strike" activity will not be rendered moot, but will remain an active point of contention and a fundamental question of the application of the First Amendment rights of bus operators like Plaintiff Slater, and the actions of the Defendant CTA ripe for redress by this Court.

**COUNT I**
**42 U.S.C. § 1983**
**Violation of First and Fourteenth Amendments**

44.     Plaintiff Slater re-alleges and incorporates by reference all preceding Paragraphs of this Complaint herein this Paragraph.

45.     Defendant CTA has previously opened the breakroom inside the Transportation Building at Defendant CTA's North Park Bus Garage and the outdoor picnic table area between the parking lot and Transportation Building as forums for speech, including the distribution of materials, by Plaintiffs' members regarding union business and politics, their mutual benefit, and the terms and conditions of their employment by CTA.

46.     Defendant CTA has previously permitted elected union representatives, including Plaintiff Slater, on the premises of Defendant CTA's North Park Bus Garage when not in service as bus operators to conduct union business, including discussion with fellow bus operators.

47.     By prohibiting Plaintiff Slater from discussing bus operator concerns and rights related to the transportation of law enforcement and arrested demonstrators, even during non-working time in non-work areas and in a manner that does not interfere with CTA's work or passengers, the CTA has imposed an unreasonable content-based restriction on Plaintiff Slater's speech, in violation of Plaintiff Slater's rights under the First Amendment as it is incorporated by the Fourteenth Amendment to apply to the State of Illinois and its instrumentalities.

48.     Defendant CTA has explicitly imposed this prohibition as a matter of policy through its Sr. Manager Jeffery Smith, through the Transportation Manager Wojewocki's conversation with Plaintiff Slater, and through the behavioral violation issued to Plaintiff Slater for the May 31, 2020 discussion.

49.     On June 5, 2020, Defendant CTA directly retaliated against Plaintiff Slater by removing him from service, issuing the behavioral violation detailed in the "interview record" to be heard on June 11, 2020, at 9:00 a.m. and by have the Chicago Police Department remove him from the premises.

50.     CTA has done so under color of state law.

51.     Defendant CTA's prohibition on the rights of bus operators to discuss their safety, moral and political concerns regarding orders to transport police demonstrations while off-duty in non-work areas of the Defendant CTA's North Park Bus Garage and discipline of Plaintiff Slater

for engaging in said conduct on May 31, 2020, are the types and kinds of actions that would chill and discourage First Amendment expression of reasonable bus operators.

52.     By singling out and prohibited disfavored bus operator speech raising concerns about assignments to transport law enforcement personnel and arrested demonstrators during demonstrations, and by disciplining and calling the police on Plaintiff Slater to further this prohibition, the Defendant CTA has engaged in an unreasonable and unconstitutional viewpoint-based restriction on Plaintiff Slater's First Amendment speech and infringes on the First Amendment rights of all bus operators.

**WHEREFORE**, Plaintiff Erek Slater respectfully prays that the Court:

A.  Enter judgment in favor of Plaintiff Erek Slater and against Defendant CTA;

B.  Preliminary and permanently order Defendant CTA to immediately rescind the behavioral violation issued to Plaintiff Slater for the May 31, 2020 discussion and order Defendant CTA to immediately reinstate Plaintiff Erek Slater into active service;

C.  Preliminarily and permanently enjoin Defendant CTA from disciplining or otherwise retaliating against Plaintiff Erek Slater for off-duty discussions with other off-duty bus operators regarding their concerns and rights related to the transportation of law enforcement and military personnel and arrested demonstrators in the breakroom of the Transportation Building, the outdoor picnic table area between the Transportation Building and the parking lot, and other non-work areas at Defendant CTA's North Park Bus Garage that do not cause disruption to Defendant CTA service;

D.  Declare that Plaintiff Erek Slater and his fellow bus operators may have off-duty discussions regarding their concerns and rights related to the transportation of law

12

enforcement and military personnel and arrested demonstrators in the breakroom of the Transportation Building, the outdoor picnic table area between the Transportation Building and the parking lot, and other non-work areas at Defendant CTA's North Park Bus Garage that do not cause disruption to Defendant CTA service

E. Preliminarily and permanently enjoin Defendant CTA from prohibiting Plaintiff Erek Slater and his fellow bus operators from holding off-duty discussions regarding their concerns and rights related to the transportation of law enforcement and military personnel and arrested demonstrators in the breakroom of the Transportation Building, the outdoor picnic table area between the Transportation Building and the parking lot, and other non-work areas at Defendant CTA's North Park Bus Garage that do not cause disruption to Defendant CTA service;

F. Grant Plaintiff Erek Slater's attorney's fees and costs; and

G. Whatever other relief this Court deems necessary and just.

Respectfully submitted,

By: __/s/ Nicholas Kreitman, Esq.
Nicholas Kreitman, Esq.
Plaintiff's Attorney

Nicholas Kreitman, Esq.
#6313283
TEMPORARY COVID-19 MAILING ADDRESS:
1350 North Wells Street, D204
Chicago, Illinois 60610
(847) 970-0575
njk@kreitmanlaw.com